UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CELIA S. PONCE, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-868-D |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
|     Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Celia Ponce brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. United States District Judge Timothy D. DeGiusti has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 14, hereinafter "R.__"). The parties have briefed their positions, and the case is now ready for decision. For the reasons set forth below, it is recommended that the Commissioner's decision be AFFIRMED.

PROCEDURAL HISTORY

Plaintiff protectively filed her application for SSI on June 28, 2010. R. 172. Plaintiff alleged a disability onset date of June 11, 2009, and sought benefits on the basis

of a spinal fusion and nerve pain. R. 165, 172. Following denial of her application initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 17, 2011. R. 25-55, 93-102. The ALJ issued an unfavorable decision on February 7, 2012. R. 8-20. The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-5; *see also* 20 C.F.R. § 416.1481. This action for judicial review followed.

## ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 416.920(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 28, 2010, her application filing date. R. 15; *see* 20 C.F.R. § 416.971. At step two, the ALJ determined that Plaintiff had the nonsevere impairments of depression and anxiety. R. 15-16. The ALJ also found that Plaintiff had the severe impairments of: disorders of the lumbar spine, discogenic and degenerative; status post December 2009 fusion; and morbid obesity. R. 16; *see* 20 C.F.R. § 416.920(c). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16-17; *see* 20 C.F.R. § 416.920(d).

At step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") based on her impairments. R. 17-19; *see* 20 C.F.R. §§ 416.920(a)(4)(iv), (e). The ALJ

found that Plaintiff had the RFC to perform "a wide range of 'light work,'" subject to exertional and nonexertional limitations:

> [Plaintiff] can lift and carry no more [than] fifteen (15) pounds maximum; requires a sit/stand option every thirty (30) minutes; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ropes, ladders, or scaffolds; and must avoid exposure to workplace hazards, such as dangerous moving machinery, unprotected heights, and open flame.

R. 17; *see* 20 C.F.R. § 416.967(b) (defining "light work"). The ALJ next found that Plaintiff was capable of performing her past relevant work as a personal care attendant. R. 19-20; *see* 20 C.F.R. §§ 416.920(f), .960(b). The ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act since June 28, 2010. R. 20; *see* 20 C.F.R. § 416.920(f).

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met.

*Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ISSUES ON APPEAL

Plaintiff asserts three claims of error on appeal, all related to the ALJ's step-four analysis of the disability determination. Pl.'s Br., Doc. No. 16, at 5-11. First, Plaintiff argues that at phase two of the step-four analysis the ALJ erroneously delegated his fact finding responsibilities to the vocational expert ("VE"). Pl.'s Br. at 6-9. Second, Plaintiff asserts that the ALJ, again at phase two of step four, failed to reconcile a conflict between the VE's testimony and the DOT listing regarding the requirements of Plaintiff's past work as a personal care attendant. *Id.* at 8-9. Finally, Plaintiff contends that these phase-two errors prevented the ALJ from making a proper determination at phase three. *Id.* at 9-11. The undersigned disagrees and concludes that the Commissioner's decision should be affirmed.

> Step four of the ALJ's evaluation of the SSI application comprises three phases:
>
> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted). In *Winfrey*, the Tenth Circuit reversed the decision of the Commissioner because the ALJ effectively delegated the phase-two and phase-three determinations to a VE. *See Winfrey*, 92 F.3d at 1024-25. The Tenth Circuit explained that, while an ALJ may *rely* on vocational information supplied by a VE, the ALJ may not abandon his or her role as fact finder to the VE. *See id.* As part of this obligation, the ALJ must articulate the factual findings underlying his or her determinations in a way that would allow an appellate court to review whether the findings are supported by substantial evidence. *See id.* at 1025 ("When . . . the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review.").

The distinction between improper delegation and proper reliance is one of substance, not form. In *Doyal v. Barnhart*, the Tenth Circuit rejected the claimant's argument that the ALJ had delegated phases two and three to the VE where the ALJ had "quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis." *See Doyal*, 331 F.3d at 761. The appellate court explained: "While the ALJ did not use the phrase 'I find' in connection with his conclusion . . . , the form of the words should not obscure the substance of what the ALJ actually did." *Id.* (citing *Winfrey*, 92 F.3d at 1025).

The circumstances here are more analogous to *Doyal* than to *Winfrey*. As in *Doyal*, the ALJ at phase one made all of the necessary findings regarding Plaintiff's RFC and included in that RFC all of Plaintiff's limitations that were supported by substantial

5

evidence. *See* R. 17-19. *Compare Doyal*, 331 F.3d at 760 (stating that "the ALJ made the RFC findings required by phase one of [the step-four] analysis"), *with Winfrey*, 92 F.3d at 1023-24 (holding that the ALJ's RFC determination did not accurately reflect the plaintiff's physical or mental limitations). Indeed, Plaintiff has alleged no error with respect to the ALJ's RFC findings at phase one. *See* Pl.'s Br. at 6.

Further, at phase two (and by extension phase three), the ALJ properly relied on testimony by the VE regarding the regarding the physical and mental demands for a hypothetical claimant working as a personal care attendant. At the hearing, the ALJ examined the VE on this point as follows:

> ALJ: If you would consider the claimant having the [RFC] to perform light [work] as defined by the regulations, who could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never should be climbing . . . ropes, ladders, or scaffolds; who should avoid exposure to workplace hazards like dangerous moving machinery, unprotected heights, and open flame. . . . Are there any jobs that exist that such a hypothetical individual could perform?
>
> VE: Yes, your honor, the work as a personal care attendant that's in the work history could be performed.
>
> . . . .
>
> ALJ: And if we add to that that claimant could lift and carry no more than 15 pounds maximum, would that have any effect?
>
> VE: Your honor, the DOT would describe that as – it'd still be in a light area on the frequent side, but a personal care attendant sits and interacts with the patient, plays games, oversees the taking of medications, so I believe that job could be performed, your honor.
>
> ALJ: Okay. And if we have a sit/stand option here about every 30 minutes, would that have any effect on that job?
>
> VE: No, your honor.

6

R. 49-50. In his decision, the ALJ cited to the VE's testimony and reached his own conclusion as to whether Plaintiff could in fact perform the job in question as it is customarily performed in the national economy:

> The [VE] testified that [Plaintiff's] past relevant work as a personal care attendant falls within the definitions of semi-skilled work performed at the light exertional level. The [VE] also testified that [an] individual possessing the [RFC] set forth above . . . would be able to perform [Plaintiff's] past relevant work as a personal care attendant.
>
> In comparing [Plaintiff's RFC] with the physical and mental demands of her past relevant work as a personal care attendant, the undersigned finds that [Plaintiff] is able to perform said past relevant work as it is actually and generally performed.

R. 19-20. This analysis is consistent with *Doyal* and in contrast to *Winfrey*, where the ALJ "made no inquiry into, or any finding specifying" the demands of the plaintiff's past work. *See Winfrey*, 92 F.3d at 1024; *Doyal*, 331 F.3d at 760-61.

This is not a situation in which the ALJ made RFC findings but then delegated the remaining phases of the step-four analysis to the VE, such that the analysis took place "in the VE's head" and left this Court with "nothing to review." *See Winfrey*, 92 F.3d at 1025. Rather, the ALJ here permissibly "rel[ied] on information supplied by the VE" and made findings of sufficient detail to satisfy the concern articulated in *Winfrey*. *See id.*; *see also Westbrook v. Massanari*, 26 F. App'x 897, 903 (10th Cir. 2002) ("Our holding in *Winfrey* . . . is not designed to needlessly constrain ALJs by setting up numerous procedural hurdles that block the ultimate goal of determining disability. Rather, its concern is with the development of a record [that] forms the basis of a decision capable

of review. . . . The duty is one of inquiry and factual development." (alteration, citation, and internal quotation marks omitted)).

Moreover, the ALJ did not fail to reconcile a conflict between the VE's testimony and the relevant Dictionary of Occupational Titles ("DOT") listing. Plaintiff alleges that the ALJ erred because he "made absolutely no inquiry into, or any findings specifying, discussing, detailing or explaining the demands of the Plaintiff's past relevant work either as Plaintiff actually performed the work or as it is customarily performed in the national economy." Pl.'s Br. at 8 (citing R. 31). Plaintiff further alleges that as a personal care attendant she was required to lift up to 50 pounds and this amount "greatly exceeds the maximum 15 pound lifting RFC imposed by the ALJ" and is "in direct conflict with the 'light work' finding of the VE." *Id.* (footnote omitted) (citing R. 179, 17, 49).

As detailed above, the ALJ examined the VE regarding how Plaintiff's past work as a personal care attendant is customarily performed in the national economy and specifically inquired as to the effect of modifying the 20-pound lifting limit typical of light work to a 15-pound lifting limit consistent with Plaintiff's RFC. *See discussion supra;* R. 49-50. In so doing, the ALJ satisfied his duty to "investigate and elicit a reasonable explanation" for any conflict between the DOT and the VE's testimony. *See Haddock v. Apfel*, 196 F.3d 1084, 1091-92 (10th Cir. 1999) (noting that a "valid explanation would be that a specified number or percentage of a particular job is performed at a lower RFC level than the [DOT] shows the job generally to require").

Further, Plaintiff's argument regarding the application of differing job requirements focuses on the fact that Plaintiff in her actual experience was required to lift

up to 50 pounds when working as a personal care attendant. The ALJ did not err in relying on the requirements of that job as it is customarily performed in the national economy. *See Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1050-51 (10th Cir. 1993) (holding that step-four determination may be made by reference to a claimant's particular past relevant work or the occupation as generally performed in the national economy); SSR 82-61, 1982 WL 31387, at *2 (1982) (same).

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by March 12, 2015. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 19th day of February, 2015.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE